Erich DIENER and ERPE, Inc. *v.* John RATTERREE

CA 96-476                                    945 S.W.2d 406

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered May 28, 1997

[Petition for rehearing denied July 2, 1997.]

*Michael E. Stubblefield, P.A.*, for appellant.

*Andrew A. Flake* and *Rex W. Chronister, P.A.*, for appellee.

JOHN F. STROUD, JR., Judge. This case involves a dispute between adjacent landowners concerning a septic system. The appellants are Erich Diener and ERPE, Inc., Diener's wholly owned corporation. The appellee is John Ratterree. The properties purchased by these parties were originally owned by one person, Bobby Taylor. When Taylor owned all of the property, he constructed a commercial building with restrooms served by an underground septic system. The commercial building was located on the portion of the property subsequently purchased by appellee. The lateral leach lines extending from the septic system ran under a portion of the property that was subsequently purchased by appellants.

Appellants purchased their parcel in 1982. The warranty deed to appellant Diener stated that the conveyance was subject to existing easements, but appellant was not told about the location of the leach lines nor did he inquire. Appellee purchased his adjoining property approximately one year later, in 1983. Problems did not arise until 1993, when appellee opened a catfish restaurant in the commercial building on his property. Appellants maintained that the increased usage of the public restrooms on appellee's property caused sewage to rise to the surface of appellants' property from the leach lines running underneath, and appellant Diener severed the lateral lines located on his property. The parties eventually filed actions against each other, and those actions were consolidated for trial. Following a hearing, the trial court found that a permanent servitude had been created on appellants' property during Taylor's prior ownership when there was unity of title. The court awarded appellee $1,000 in damages, representing the cost of repairing the lateral lines that were severed four times by appellant. The court also permanently enjoined appellants from interfering with those lines. The court denied appellee's request for damages based on trespass. This appeal followed. We affirm.

Appellants argue in the first point of appeal that the "trial court erred in finding that the existence of a septic system during unity of title created a permanent servitude on the appellants' property in favor of the appellee, and in awarding damages to the appellee." We find no error.

■■ Under this point, appellants use the terms "prescriptive easement" and "implied easement" as if they were interchangeable. They are not. Here, we are dealing with a type of "implied easement." Our supreme court has defined an "implied easement" as follows:

> Where, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part, and where at the time of a later severance of ownership the servitude is in use and is reasonably necessary for the enjoyment of that part of the property favored by the servitude, then the servitude survives the severance and becomes an easement by implication. *In order for such an easement to be estab-*

*lished it must appear not only that the easement was obvious and apparently permanent but also that it is reasonably necessary for the enjoyment of the property, the term "necesssary" meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement. An easement by implication does not arise merely because its use is convenient to the beneficial enjoyment of the dominant portion of the property.*

*Kennedy v. Papp*, 294 Ark. 88, 741 S.W.2d 625 (1987) (emphasis added).

■ ■ In making their argument under this first point, appellants argue that the use of the claimed "prescriptive easement" was not apparent and that it was not necessary. Whether an easement is apparent and necessary is ordinarily a question of fact. *Greasy Slough Outing Club, Inc. v. Amick*, 224 Ark. 330, 274 S.W.2d 63 (1954). While we review chancery cases *de novo*, we do not reverse the chancellor's findings unless they are clearly against the preponderance of the evidence, or clearly erroneous. Ark. R. Civ. P. 52(a); *Carver v. Jones*, 28 Ark. App. 288, 773 S.W.2d 842 (1989).

■ Apparentness of use does not necessarily "mean actual visibility, but rather susceptibility of ascertainment on reasonable inspection by persons ordinarily conversant with the subject." 25 AM. JUR. 2D *Easements & Licenses* § 30 (1966). Each case must necessarily depend upon its particular facts. Here, the chancellor found that the septic system was reasonably necessary to appellee's use of the property and that the "test of apparent and obvious" had been satisfied. Those findings are not clearly erroneous. Appellant Diener had owned land adjacent to the property in question, and he knew that the property had to be served by septic systems because there were no sewer lines in the area.

> We announced the rule in this language in *Waller v. Dansby*, 145 Ark. 306, 224 S.W. 615: "The general rule is, that whatever puts a party upon inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty as in the case of vendor and purchaser, and would lead to the knowledge of the requisite fact, by the exercise of ordinary diligence and understanding. Or, as the rule has been expressed more briefly, where a man has suffi-

cient information to lead him to a fact, he shall be deemed cognizant of it."

*Hannah v. Daniel*, 221 Ark. 105, 252 S.W.2d 548 (1952). We cannot say that the chancellor's finding that appellant Diener possessed sufficient information to make apparent the existence and location of lateral leach lines extending from the adjoining property's septic system was clearly erroneous.

█ Neither can we say that the trial court's finding that the septic system is reasonably necessary to appellee's use of his property was clearly erroneous. It is the necessity at the time of the conveyance that governs. *Greasy Slough*, 224 Ark. at 338. The commercial building, with its restrooms and septic system, was in existence at the time of the conveyance in 1983. Because there are no sewer lines in the area, a septic system is reasonably necessary to the property owner's use of the property.

In the second point of appeal, appellants argue that the "trial court erred in finding that the appellants' imputed awareness of the need for septic systems in the general area met the legal requirement that a prescriptive easement be apparent and obvious." This argument was addressed under Point I and needs no further discussion.

Affirmed.

ROGERS and MEADS, JJ., agree.

ROBBINS, C.J., CRABTREE, J., and HAYS, S.J., dissent.

TERRY CRABTREE, Judge, dissenting. While I agree with the majority opinion that an "implied easement" was created when there was unity of ownership of the two parcels in question, I cannot agree with the majority that the easement was "apparent and necessary" at the time the appellant purchased his property.

Before the parties acquired their respective properties, all of the property was owned by Bobby Taylor. Taylor constructed a building with a septic system on part of the property and used it for a real estate office that was open to the public. In 1976, Taylor sold the portion of the land with the building and septic tank to Jolly Baugh. Taylor owned the adjoining property on three sides, and Highway 71 was on the fourth side. The property was used as

a restaurant for approximately three years and then was sold to another party. Baugh regained the property through a foreclosure action and conveyed the property to the appellee, John Ratterree, by warranty deed dated July 13, 1983.

The appellee ran a satellite business at the location until 1987 when the business was closed. In December 1993, the appellee opened a restaurant on the premises. The appellee did not modify or change the original septic system.

The appellant purchased the property that adjoins the appellee's property on August 25, 1982. The warranty deed to the appellant was "Subject to, existing right of ways, easements, restrictions and previous reservations, if any." After purchasing the property, a wet spot developed and the appellant discovered that the lateral lines from the septic tank on the appellee's property ran onto his property. The appellant testified at trial that he had inspected the property before buying it and was not aware of the lateral lines buried on his property.

After trial, the court ruled in favor of the appellee and stated in its order, in part:

> The Court finds that the test of apparent and obvious which is required by law has been met where the Defendant, as in this case, is knowledgeable with the fact that property within that area with indoor plumbing was required to be on a septic or similar system.

Knowledge of other property in the area does not rise to the level of apparent and obvious sufficient to put the appellant on notice that his neighbor had septic system lateral lines running beneath his property. The lines were buried several feet beneath the surface of the land and, at the time the appellant purchased his property, the restaurant was not in operation. The appellant testified that after the restaurant started in business, sewage would bubble to the surface of his property. While credibility of the witnesses is reserved for the trial court and I would normally defer to the superior position of the trial court, the trial court found in this instance that the test of apparent and obvious was met because other property in the area with indoor plumbing had to be on a septic or similar system. This is not the visible use contemplated

in *Greasy Slough Outing Club, Inc. v. Amick*, 224 Ark. 330, 274 S.W.2d 63 (1954), in which the Arkansas Supreme Court quoted *John Hancock Mutual Life Ins. Co. v. Patterson*, 103 Ind. 582, 2 N.E. 188 (1885), stating:

> In such case, the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such *visible uses* and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made.

*Id.* at 338, 274 S.W.2d at 67 (emphasis added).

In the case of *Hannah v. Daniel*, 221 Ark. 105, 252 S.W.2d 548 (1952), relied on by the majority opinion for the proposition that "where a man has sufficient information to lead him to a fact, he shall be deemed cognizant of it," the supreme court reversed the trial court and stated:

> [W]e think the preponderance of the evidence is against appellees' contention that the physical condition of lot 12 at the time of appellants' purchase was such, *by reasonable inspection*, to make it apparent of the existence of a servitude that would charge them with notice of an easement.

*Id.* at 109-10, 252 S.W.2d at 551 (emphasis added).

The *Hannah* case was cited in *Childress v. Richardson*, 12 Ark. App. 62, 670 S.W.2d 475 (1984), for the rule that: "A purchaser of real estate is charged with notice of an unrecorded easement when the existence of the servitude is apparent upon an ordinary inspection of the premises." *Id.* at 64, 670 S.W.2d at 476. In the *Childress* case, this court reversed the trial court's finding that a subsequent purchaser of real property was bound by an unrecorded prescriptive easement for a private gas line that went across the appellant's property. There were three meters for various gas lines and the appellant testified that he thought that two of the meters serviced an adjoining property owner but not the appellee. The court stated:

> In the present case, there was no actual notice to appellants and there was no evidence of the gas line sufficient to put appellants on notice of its presence. The line was entirely under-

> ground, and there was nothing to put appellants on notice that one of the three meters east of appellants' property serviced appellees' residence. Appellant James Childress testified that he was aware of the three meters, but had thought that one of the meters was his and that the other two serviced the two houses on the Flack property. Under the circumstances of this case his belief was a reasonable one.

*Id.* at 65, 670 S.W.2d at 476.

This case is similar to the *Childress* case, and, rather than overrule a long line of cases that require some use, preferably visible, that would put a prospective purchaser on notice, I would reverse. I dissent.

ROBBINS, C.J., and HAYS, S.J., join.