Elmer KRALICEK *et al. v.* Wayne and Diane CHAFFEY

CA 98-1351                                    998 S.W.2d 765

Court of Appeals of Arkansas
Division III
Opinion delivered September 15, 1999

*Gean, Gean, & Gean*, by: *Roy Gean III*, for appellants.

*Jones, Jackson & Moll, PLC*, by: *Mark Moll*, for appellees.

TERRY CRABTREE, Judge. This appeal concerns a dispute between adjoining landowners over the right to use a twenty-five-foot alley that runs between their properties. The chancellor issued a decree quieting title to the alley in appellees. On appeal, appellants contend that the chancellor should have found that an easement by prescription or an easement by implication existed in their favor, or should have found that appellants were part-owners of the alley by virtue of Ark. Code Ann. § 14-301-306 (1987). We find no error and affirm.

The parties' lots are adjacent to each other on the north side of Rogers Avenue in Fort Smith. Appellants' property to the west contains an old home that has been converted to commercial use. At the time this case arose, the home was leased to Vintage Gallery & Interiors, Inc. Appellees' property to the east contains a two-story apartment building. A twenty-five-foot alley lies between the two tracts. It runs north from Rogers Avenue to the back of the properties for a distance of approximately 225 feet. Along the west side of the alley, near its beginning point at Rogers Avenue, there is a rectangular-shaped parking area. The area extends approximately sixteen feet west of the alley and approximately one hundred feet northward, parallel with the alley. To reach the parking area, it is necessary to turn off of Rogers Avenue onto the alley. The alley is not the only means of access to appellants' property, but it is the most convenient.

According to appellants, both their property and appellees' property had common owners: Tommy Keeton, Charles Palmer,

and Ralph Freeman.[1] Ownership was split when the three men conveyed what would eventually become appellees' tract (the apartment building) to CRT Properties and conveyed what would eventually become appellants' tract (the old home) to Tommy Keeton. Keeton and CRT entered into a contractual arrangement in 1981, whereby Keeton was granted an easement of ingress and egress in the alley and CRT was granted an easement for parking purposes in the parking area. They agreed to be jointly responsible for the maintenance of both areas.

In 1983, CRT conveyed the apartment building and the twenty-five-foot alley to Mr. Rob's, Inc. Mr. Rob's deeded the apartment building to appellees in 1996 and, by quitclaim deed, conveyed the twenty-five-foot alley to them in 1997. Keeton maintained ownership of the old house until 1989. In that year, he conveyed the property to Steve Whitlock, appellants Darrell and Deborah Robinson, and others. As we interpret the property description in the deed, the parking area was part of the conveyance. The Robinsons, who apparently became sole owners of the property at some point, conveyed it to themselves and appellants Elmer and Donna Kralicek by warranty deed in 1995.

During the time the two properties were owned by appellants' and appellees' predecessors in title, use of the alley and the parking area was shared in a harmonious manner. However, controversy arose in late 1996. Appellants' tenant, Village Gallery & Interiors, Inc., began to object to appellees and their tenants using the sixteen-by-one-hundred-foot parking area. Further, appellants began constructing additional parking at the north end of the twenty-five-foot alley in such a manner as to encroach upon the alley. In response, appellees filed a quiet-title action seeking a declaration that they were the owners of the twenty-five-foot alley and that they had a right to use the parking area. Appellants answered that they and their predecessors had used the alley for so long as to establish an easement by prescription. They also averred that the alley had once been dedicated as a public street by the city

---

[1] The record contains no deeds or other documentary evidence to support appellants' assertion of common ownership by Keeton, Palmer, and Freeman. However, there was testimony to that effect at trial.

of Fort Smith but was later abandoned. Therefore, they claimed, appellees and they each owned to the center line of the alley, as dictated by Ark. Code Ann. § 14-301-306.

After a trial, the chancellor found that neither appellants nor appellees had established a prescriptive easement in each others' property, *i.e.*, appellants had no prescriptive easement in the alley, and appellees had no prescriptive easement in the parking area. He ruled that any prior uses of the alley and the parking area were permissive. He further found that Ark. Code Ann. § 14-301-306 did not apply in this case. It is from these findings that appellants bring their appeal. Appellees do not cross-appeal.

■ Chancery cases are tried *de novo* on appeal. *Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998). However, we do not reverse a chancellor's findings of fact unless they are clearly erroneous. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*

■ Appellants argue first that the chancellor erred in failing to impose an implied easement in their favor in the twenty-five-foot alley. An easement by implication arises where, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part and where, at the time of a later severance of ownership, the servitude is in use and is reasonably necessary for the enjoyment of that part of the property favored by the servitude. *Kennedy v. Papp*, 294 Ark. 88, 741 S.W.2d 625 (1987); *Diener v. Ratterree*, 57 Ark. App. 314, 945 S.W.2d 406 (1997). Appellants claim that their use of the alley was reasonably necessary for the effective management and operation of their commercial enterprise. Appellees respond that appellants are procedurally barred from making this argument because it is being raised for the first time on appeal. *See generally Benton v. Barnett*, 53 Ark. App. 146, 920 S.W.2d 30 (1996).

■ Appellants acknowledge that they did not raise the theory of easement by implication or the similar theory of easement by necessity in their pleadings. However, they contend that facts

supporting these theories were raised during the trial. Further, they assert that, during the trial, they made a motion to amend the pleadings to conform to the proof. *See* Ark. R. Civ. P. 15(b). However, even if it can be said that appellants raised the implied easement and easement by necessity theories by virtue of a motion to amend their pleadings, they are still procedurally barred from obtaining review on these issues because they failed to obtain a ruling on them from the chancellor. *See Santifer v. Arkansas Pulp-wood Co.*, 66 Ark. App. 145, 991 S.W.2d 130 (1999), where the same argument regarding the theory of estoppel was unsuccessfully asserted. A ruling by the chancellor on a challenged issue is a prerequisite to our review of that issue. Even questions raised at the trial level, if left unresolved, are waived and may not be relied upon on appeal. *Britton v. Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987).

In any event, we do not believe that appellants proved the necessary elements of an easement by implication. Their evidence did not show that, during unity of title, the landowners imposed a servitude on their property in favor of another part of their property. At most, appellants proved that an express easement was created by contract *after* title was severed.

Next, appellants argue that the chancellor should have imposed an easement by prescription in their favor. The chancellor declined to find that such an easement existed because prior use of the alley by appellants and their predecessors was permissive rather than adverse. One asserting an easement by prescription has the burden of showing by a preponderance of the evidence that his use of the disputed area has been adverse to the owner and the owner's predecessors in title under claim of right for the statutory period. *Fields v. Ginger*, 54 Ark. App. 216, 925 S.W.2d 794 (1996). The statutory period is seven years. *Johnson v. Jones*, 64 Ark. App. 20, 977 S.W.2d 903 (1998). Permissive use of an easement cannot ripen into an adverse claim without clear action placing the owner on notice. *Manitowoc Remanufacturing, Inc. v. Vocque*, 307 Ark. 271, 819 S.W.2d 275 (1991). However, there is a variation in that rule. If usage of a passageway over land, whether it began as permissive or otherwise, continues for seven years after the facts and circumstances of the usage are such that

the landowner would be presumed to know the usage was adverse, then the usage ripens into an absolute right. *Chapin v. Talbot*, 13 Ark. App. 53, 679 S.W.2d 219 (1984).

■ Determination of whether use of a roadway is adverse or permissive is a question of fact. *Fields v. Ginger, supra.* A chancellor's finding with respect to the existence of a prescriptive easement will not be reversed unless clearly erroneous. *Johnson v. Jones, supra.* Former decisions are of little value on the factual issue of whether a use is permissive or adverse. *Id.*

■ It is apparent from the evidence at trial that appellants and their predecessors in title have used the twenty-five-foot alley since at least 1981 to gain access to their property. However, we agree with the chancellor that the use appears to have been permissive rather than adverse. Appellants' predecessor ,Tommy Keeton, was entitled to use the alley between 1981 and 1989 by virtue of a written agreement between himself and appellees' predecessor, CRT. It cannot be said that such use, pursuant to a contract, was adverse. Appellants' next predecessor, Steve Whitlock, used the alley from 1989 to 1993, during which time it was owned by appellee's predecessor, Mr. Rob's, Inc. According to Whitlock, his use of the alley was the result of an "unspoken agreement" between himself and Ray Stroud of Mr. Rob's. Ray Stroud testified that, during the time he owned appellees' property between 1983 and 1996, neither Keeton nor Whitlock made any adverse claim against or maintained any ownership interest in the alley. Under these circumstances, the chancellor was justified in finding that no adverse usage was made of the alley prior to appellants' ownership in 1995. Therefore, we cannot say his finding was clearly erroneous on this issue.

Finally, we come to the question of whether appellants and appellees have an equal ownership interest in the alley by virtue of Ark. Code Ann. § 14-301-306(a) (1987). That statute reads:

> Upon the adoption of [a city] ordinance [vacating a public way], the absolute ownership of the property abandoned by the city or town shall vest in the owners of the real estate abutting thereon. Each such abutting owner shall take title to the center line of the street or alley so abandoned, and the ownership shall

be free from the easement of the city or town for public use as a street or alley.

■ ■ Testimony in the record indicates that the alley was dedicated to the city of Fort Smith in 1933. The alley was abandoned by the city in 1981. According to appellants, section 14-301-306 means that, when the city abandoned the alley, the adjoining landowners, *i.e.*, they and appellees, became vested with title to the center line of the alley from their respective sides of the alley. A literal reading of section 14-301-306 would support appellants' argument. However, we decline to interpret section 14-301-306 in such a way as to automatically vest the fee to the abandoned alley in both appellants and appellees. At common law, when property was dedicated for a public purpose, such as a highway, the landowner retained a fee ownership in the highway, subject to the public's right to use it. *McGee v. Swearengen*, 194 Ark. 735, 109 S.W.2d 444 (1937). However, whether the landowner's reversionary interest, upon abandonment of the highway, extended to the center of the highway or to the entire highway depended upon whether he contributed land on one side of the highway only or on both sides. Generally, his fee would extend only to the center of the highway. However, if he had owned property on both sides of the highway, his reversionary interest extended to the entire highway. *Id.* We do not believe section 14-301-306 was intended to change these common law rules. Statutes will not be taken in derogation of common law unless the act shows that such was the intent of the legislature. *Steward v. McDonald*, 330 Ark. 837, 958 S.W.2d 297 (1997). No such intention is apparent here.

■ We have no information concerning the ownership of the abutting property at the time the dedication of the alley was made. Thus, we cannot apply section 14-301-306. It is appellants' burden to make a record showing entitlement to relief. *Goodwin v. Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989).

Affirmed.

JENNINGS and STROUD, JJ., agree.